(June 14, 2012)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MARK BLOND, JR., Appellant. [946 NYS2d 663]—

Rose, J.P. Appeals (1) from a judgment of the Supreme Court (R. Sise, J.), rendered July 31, 2009 in Schenectady County, upon a verdict convicting defendant of the crimes of rape in the first degree, rape in the third degree, criminal sexual act in the third degree, sexual abuse in the third degree, attempted assault in the second degree, endangering the welfare of a child,

criminal mischief in the third degree and criminal mischief in the fourth degree, and (2) by permission, from an order of the County Court of Schenectady County (Drago, J.), entered August 31, 2010, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.

Defendant was indicted on 10 counts stemming from his sexual abuse and rape of a 15-year-old victim, his attempted assault with a brick on his wife, who was the victim's aunt, and property damage he caused to his wife's vehicle when he repeatedly drove his own vehicle into it. When he was arrested and taken into custody, he also caused property damage to a police vehicle by shattering its window in a violent rage. Following a jury trial, defendant was convicted of rape in the first degree, rape in the third degree, criminal sexual act in the third degree, sexual abuse in the third degree, attempted assault in the second degree, endangering the welfare of a child, criminal mischief in the third degree and criminal mischief in the fourth degree. Supreme Court (R. Sise, J.) sentenced defendant to an aggregate prison term of 22²/₃ years followed by 20 years of postrelease supervision. Defendant's subsequent motion to vacate the judgment of conviction based on, among other things, ineffective assistance of counsel, was denied by County Court (Drago, J.) without a hearing. Defendant appeals the judgment of conviction and, with this Court's permission, the order denying his postjudgment motion.

Prior to trial, Supreme Court held a *Molineux/Ventimiglia* hearing and determined that the People would be allowed to offer evidence of prior domestic violence and abusive behavior by defendant for the purposes of establishing the element of forcible compulsion, providing necessary background information on the nature of the relationship and placing the charged conduct in context (*see People v Leeson,* 12 NY3d 823, 826-827 [2009]; *People v Shofkom,* 63 AD3d 1286, 1287-1288 [2009], *lv denied* 13 NY3d 799 [2009], *appeal dismissed* 13 NY3d 933 [2010]; *People v Watson,* 281 AD2d 691, 694 [2001], *lv denied* 96 NY2d 925 [2001]). Defendant concedes that there was a proper nonpropensity purpose for the admission of the evidence, but he argues that the probative value of these prior bad acts was outweighed by their prejudicial nature. We cannot agree. Supreme Court balanced the probative value and prejudicial nature of the evidence by limiting it to specific acts of violence that were witnessed by the victim and occurred after she began residing with defendant and his wife. The evidence has substantial probative value and provided necessary background information regarding the victim's fear of defendant and result-

ing unwillingness to tell anyone about the sexual abuse until after he was in police custody as a result of his most recent violent altercation with his wife (*see People v Cass*, 18 NY3d 553, 563 [2012]; *People v Poquee*, 9 AD3d 781, 782 [2004], *lv denied* 3 NY3d 741 [2004]; *People v Tarver*, 2 AD3d 968, 969 [2003]). As contemporaneous limiting instructions on the use of such evidence were given twice during the trial, as well as in the final jury charge, any error in failing to give the instructions a third time after the wife's testimony—a failure that was not called to the court's attention by counsel—is harmless (*see People v Burnell*, 89 AD3d 1118, 1121 [2011], *lv denied* 18 NY3d 922 [2012]).

We next turn to defendant's allegations that the People failed to establish forcible compulsion with respect to the charge of rape in the first degree, that the verdicts were contrary to the physical evidence and that the victim's testimony was incredible as a matter of law. In evaluating the legal sufficiency of the evidence, we view it in a light most favorable to the People and will not disturb a verdict as long as there is a "valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury" (*People v Bleakley*, 69 NY2d 490, 495 [1987]; *see People v Houghtaling*, 79 AD3d 1155, 1156-1157 [2010], *lv denied* 17 NY3d 806 [2011]). As relevant here, forcible compulsion includes "a threat, express or implied, which places a person in fear of . . . physical injury to . . . herself or another person" (Penal Law § 130.00 [8] [b]). In determining whether an implied threat existed, the jury could consider the victim's age relative to that of defendant, the relationship between them and the victim's fear of what defendant might have done if she did not comply (*see People v Fulwood*, 86 AD3d 809, 810-811 [2011], *lv denied* 17 NY3d 952 [2011]; *People v Hemingway*, 85 AD3d 1299, 1301 [2011]).

The People's evidence established that the victim had witnessed numerous instances of violence by defendant against his wife since she had moved in with the couple in October 2007. During the early morning hours of May 2, 2008, when the victim was 15 years old, the 29-year-old defendant demanded sex and, when she said no, he pulled her pants down, maneuvered her to the floor and held her there while he had intercourse with her. The victim testified that she was afraid to cry out for fear that it would only lead to more physical violence by defendant. The victim's testimony regarding a number of sexually abusive encounters with defendant during the relatively short time frame in which she resided in his home, her fear of defendant, his use of physical force to hold her down, as well as

the atmosphere of physical violence and intimidation she had witnessed were sufficient to establish the element of forcible compulsion (*see People v Coleman*, 42 NY2d 500, 505-506 [1977]; *People v Fulwood*, 86 AD3d at 810-811; *People v Porter*, 82 AD3d 1412, 1414 [2011], *lv denied* 16 NY3d 898 [2011]).

A physical examination of the victim performed a few days after the rape revealed recent injuries to her hymen and irritation consistent with the reported sexual activity. The evidence also showed that a pair of the victim's jeans—which had defendant's semen on them—were recovered by the police during a search of defendant's home. Defendant points to no inconsistencies or other aspects of the victim's testimony that would render it incredible as a matter of law (*see People v Galloway*, 93 AD3d 1069, 1071-1072 [2012]; *People v Shofkom*, 63 AD3d at 1287). In short, our review of the record convinces us that the evidence was legally sufficient to satisfy each element of every crime for which defendant was convicted. Furthermore, upon our independent review of the evidence in a neutral light, with due regard to the jury's credibility determinations (*see People v Wright*, 81 AD3d 1161, 1163 [2011], *lv denied* 17 NY3d 803 [2011]), we find that the verdicts are not against the weight of the evidence (*see People v Hemingway*, 85 AD3d at 1301; *People v Battease*, 74 AD3d 1571, 1575 [2010], *lv denied* 15 NY3d 849 [2010]; *People v Shofkom*, 63 AD3d at 1287).

Defendant also contends that Supreme Court improperly precluded him from calling three social workers to testify that they had conducted a statement validity analysis test of the victim for use in Family Court, where such testimony is authorized if it tends to support the reliability of a child victim's out-of-court statement of abuse or neglect (*see* Family Ct Act § 1046 [a] [vi]). Defendant concedes that such opinion evidence cannot be used in a criminal proceeding by the People during their case-in-chief (*see People v Zurak*, 168 AD2d 196, 199 [1991], *lv denied* 79 NY2d 834 [1991], *cert denied* 504 US 941 [1992]), but argues that it should be admissible for purposes of impeachment where, as here, such validation testing fails to corroborate the victim's claims. We are not persuaded, however, as there is no corresponding statutory authority for the admission of such evidence in a criminal proceeding. Moreover, defendant was otherwise fully able to attack the victim's credibility through cross-examination based on her alleged bias in favor of the wife and her failure to report her accusations earlier.

Defendant also argues that Supreme Court should have conducted an inquiry of a juror who appeared to be sleeping at one point during the trial, yet he did not make this request of

the court and did not object to the juror's continued service. Accordingly, his argument that an inquiry should have occurred is unpreserved for our review (*see People v Galloway*, 93 AD3d at 1072). Were we to consider this matter, we would find that Supreme Court's observations provided it with an adequate basis for its conclusion that the juror had not missed a significant portion of the trial testimony and, therefore, was not grossly unqualified to continue to serve as a juror (*see People v Buel*, 53 AD3d 930, 931 [2008]; *compare People v Adams*, 179 AD2d 764, 765 [2d Dept 1992]).

Nor can we agree with defendant's contention that he was denied the effective assistance of counsel. The claim that counsel erred by failing to seek dismissal of the indictment pursuant to CPL 190.50 (5) (b) is without merit as defendant offered no proof in his CPL 440.10 motion that he timely informed counsel of his desire to testify before the grand jury. In any event, the failure to facilitate testimony before a grand jury is not per se ineffective assistance of counsel (*see People v Simmons*, 10 NY3d 946, 949 [2008]; *People v Lasher*, 74 AD3d 1474, 1475-1476 [2010], *lv denied* 15 NY3d 894 [2010]). Although defendant also claims that his counsel incorrectly advised him of the maximum sentence to which he was exposed while he was considering the pretrial offer, and despite the apparent mistake either in what counsel said on the record or what was transcribed when defendant rejected the pretrial offer against his counsel's advice, the affidavit defendant submitted in support of his CPL 440.10 motion confirms that, prior to proceeding to trial, he was well aware of the potential for a 25-year sentence on the top count of rape in the first degree. When viewed in their totality, the circumstances reveal that counsel was prepared, made appropriate pretrial motions, pursued a credible defense strategy, made cogent opening and closing statements, ably cross-examined the People's witnesses, presented witnesses on the defense case and obtained dismissal of two counts of the indictment. We have considered all of the ineffective assistance claims, including each of those made by defendant in his pro se brief, and find that he received meaningful representation (*see People v Muniz*, 93 AD3d 871, 876 [2012]; *People v Fulwood*, 86 AD3d at 811; *People v Elwood*, 80 AD3d 988, 990 [2011], *lv denied* 16 NY3d 858 [2011]).

With respect to the sentence, defendant argues that the disparity between the final pretrial offer of 3½ years in prison and the sentence ultimately imposed reflects an extreme penalty for his exercise of his right to a jury trial. Although the disparity is significant, there is no record evidence that the sentences

were retaliatory or vindictively imposed as a penalty for defendant's exercise of his right to a jury trial (*see People v Snyder*, 91 AD3d 1206, 1215 [2012]; *People v Molina*, 73 AD3d 1292, 1293 [2010], *lv denied* 15 NY3d 807 [2010]). We must agree with Supreme Court that the crimes are of a serious nature, they were committed against a backdrop of physical violence, they involved a vulnerable teenager who was living in defendant's household, he received less than the maximum allowable sentence for rape in the first degree and he has refused to take any responsibility for his conduct or exhibit any remorse (*see People v Snyder*, 91 AD3d at 1206; *People v Tomlinson*, 53 AD3d 798, 800 [2008], *lv denied* 11 NY3d 835 [2008]). Accordingly, we can find no abuse of discretion or extraordinary circumstances that would warrant our modification of the sentence (*see People v Rhodes*, 91 AD3d 1185, 1188 [2012]; *People v Elwood*, 80 AD3d at 988).

Finally, defendant's arguments that certain counts in the indictment are duplicitous, that the prosecutor engaged in misconduct and that the charge to the jury was inadequate are unpreserved and, were we to consider them, without merit as well.

Malone Jr., Stein, Garry and Egan Jr., JJ., concur. Ordered that the judgment and order are affirmed.